The People of the State of Illinois, Plaintiff-Appellee, *v.* Charles Taylor, Defendant-Appellant.

(No. 54905;

First District—January 3, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Herbert Becker, Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel,) for appellants.

314

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Brent F. Carlson, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LYONS delivered the opinion of the court:

The defendant, Charles Taylor, was indicted for armed robbery (Ill. Rev. Stat. 1967, ch. 38, par. 18—2) and, following a bench trial, was found guilty as charged. Defendant was sentenced to the Illinois State Penitentiary for not less than two nor more than ten years.

On appeal defendant presents three issues for review:
1. Whether the evidence was sufficient to support a guilty finding;
2. Whether the trial judge improperly admonished defendant regarding his right to a trial by jury;
3. Whether the sentence imposed was excessive.

At trial, Antoinette Spence, age 17, testified that she was walking east on Lake Street near Hermitage Avenue, Chicago, about 2:00 P.M., September 29, 1969, when she observed a group of boys standing on the other side of the street. Three of these boys, one of whom she positively identified as the defendant, suddenly began chasing her. The three boys caught her, dragged her into the street, beat and kicked her, and stole her purse. The defendant personally struck her at least five times. After taking her purse, the three boys ran off and she proceeded to phone the police. The value of the purse and its contents was approximately $100.

Mrs. Josephine Townsill testified that she was coming out of a grocery store at 1800 West Lake Street about 2:00 P.M., September 29, 1969, when she noticed seven or eight boys standing outside the store. She heard one of the boys say "Let's get her" and then saw the defendant and two others run after Miss Spence. Miss Spence at this time was across the street, walking east, and was about ninety feet east of the store. Mrs. Townsill saw the three boys grab Miss Spence, throw her to the ground and kick her. Mrs. Townsill moved toward the scene and screamed, "Leave her alone." The boys fled with Miss Spence's purse. Mrs. Townsill then aided Miss Spence and went with her to call the police. Mrs. Townsill was not acquainted with Miss Spence prior to the occurrence of this incident.

Officer Robert Kussy testified concerning the circumstances of defendant's arrest and the State rested its case. A defense motion for a directed verdict was denied and the defense then presented three witnesses.

Margaret Jackson, defendant's grandmother, testified that the defendant spent the night of September 28th in her home at 1737 West Warren Boulevard and left sometime between 1:30 and 2:00 P.M. on September

29th. She indicated that Warren Boulevard was about two blocks from Lake Street.

Billie Bell, defendant's uncle, testified that he was with the defendant in Mrs. Jackson's home on September 29th. He left about 1:30 P.M. and the defendant was still there watching television at that time.

Testifying on his own behalf, the defendant, age 20, stated that he left his grandmother's home about 1:40 P.M. and walked down Hermitage Avenue. He stopped at a friend's house for about five minutes and then proceeded toward Fulton and Damen where he intended to pick up a paycheck. He stopped to chat with Eric Hyman and another fellow at the intersection of Lake and Woods Streets. A few minutes later the police drove up and, in defendant's words, "One of the fellows ran and that left me and Eric standing there." The defendant and Hyman were then arrested for the robbery of Antoinette Spence.* Both were later identified by Miss Spence at the police station. Defendant denied having participated in the robbery.

■■ For his first contention, defendant argues that the evidence was insufficient to establish his guilt beyond a reasonable doubt. The thrust of his argument is twofold: first, he argues that it was error to convict him of armed robbery because there was no evidence whatsoever concerning the use of a weapon during the robbery of Miss Spence; second, he argues that the evidence was too uncertain and unsatisfactory to support a finding that he participated in the robbery. We find defendant's first argument to be a meritorious one. Nowhere in the evidence is there any indication that a dangerous weapon was used during the robbery of Miss Spence. Hence, because the criminal statute on armed robbery specifically requires the use of a dangerous weapon, it was error for the trial court to have found defendant guilty of armed robbery. (See Ill. Rev. Stat. 1967, ch. 38, pars. 18—1, 18—2.) Having made this determination, we are constrained to take some appropriate action to remedy the error. For reasons which will be evident, however, we first proceed to consider defendant's argument that the evidence was too unsatisfactory and uncertain to support a finding that he participated in the offense.

■■ We are of the opinion, after carefully reviewing the record before us, that the evidence adduced at trial was sufficient to establish beyond a reasonable doubt that defendant participated in the robbery of Miss Spence. We have discovered no serious discrepancies or contradictions in the State's proof and we note specifically that Miss Spence's version of

---

* Eric Hyman was co-indicted with defendant for armed robbery. Hyman, however, pleaded guilty to a charge of robbery and was placed on probation for five years, with the first six months to be served in the County Jail.

the incident was entirely credible. Her testimony was substantially corroborated by that of Mrs. Townsill, a disinterested eyewitness, and both women were quite positive in their respective identifications of the defendant. So far as defendant's evidence is concerned, we note that neither Mrs. Jackson nor Mr. Bell corroborated defendant's denial. Their testimony established only that defendant left his grandmother's home between 1:30 and 2:00 P.M. on the afternoon in question. The offense did not occur until 2:00 P.M. or shortly thereafter and its location was only about two blocks from Mrs. Jackson's home, a distance which defendant could have easily covered within a very short time. We conclude, therefore, that although defendant was not shown to have committed armed robbery, he was proven guilty, beyond a reasonable doubt, of "simple" or "plain "robbery, which is both a violation of Ill. Rev. Stat. 1967, ch. 38, par. 18—1 and also an included offense of armed robbery. (See Ill. Rev. Stat. 1967, ch. 38, par. 2—9.) Accordingly, we exercise our power under Supreme Court Rule 615(b)(3) (Ill. Rev. Stat. 1969, ch. 110A, par. 615(b)(3)) and reduce the degree of the offense for which defendant was convicted from armed robbery to robbery. See *People v. Kurtz*, 1967, 37 Ill.2d 103; *People v. Borden*, 1967, 84 Ill.App.2d 442.

■■ For his second contention defendant asserts that the trial judge improperly admonished him concerning his right to a trial by jury. He supports this contention with a showing that the trial judge advised him that the maximum penalty prescribed by statute for the offense charged was one to twenty years in the penitentiary, whereas the actual maximum penalty for armed robbery was an indeterminate term with a minimum of two years. Indeed, the record does indicate that the judge erroneously advised defendant of the maximum possible penalty, but we fail to see how this had any bearing on the validity of the jury waiver. Defendant apparently attempts to equate a jury waiver with a plea of guilty where concededly the potential sentence is a weighty consideration. Here, however, defendant had entered a plea of not guilty and was quite insistent that the case be tried. In connection with his right to a trial by jury, he was admonished as follows:

"Q. Do you want a bench trial or a jury trial?
A. Bench.
Q. Do you understand that you have a right to a jury trial?
A. Yes.
Q. The lawyer explained to you that you have a right to have this matter heard today by a jury?
A. Yes.
Q. Do you know the difference between a jury trial and a bench trial?
A. Yes.

Q. What is the difference?

A. One you get twelve people and the other the judge decides.

Q. That's right. If you have a jury, you get twelve people to make a determination as to your guilt or innocence. On a bench trial, the Court decides it by himself; do you understand that?

A. Yes.

Q. You realize you have a constitutional right to a trial by jury?

A. Yes, sir.

Q. And based upon that fact, you are still asking the Court to waive your rights to a trial by jury, and you are ready to proceed and have the Court hear the case and make a determination as to whether or not you are guilty or innocent of the charges contained in this indictment?

A. Yes, sir."

The defendant then executed a written jury waiver and tendered it to the court. Under these circumstances we find no merit in defendant's contention that his jury waiver was not understandingly and knowingly exercised. All of the evidence is quite to the contrary. Insofar as the question of maximum penalty is concerned, we note that the sentence imposed was well within the limits stated by the judge prior to trial. Hence, defendant was in no way prejudiced or harmed by the judge's error.

■■ Defendant finally contends that the sentence imposed was excessive. He refers us to the evidence of good character presented at the hearing in mitigation and aggravation and emphasizes that he had no prior criminal record. We are mindful, of course, that the trial court also heard such evidence before imposing sentence and we would normally be extremely cautious in overriding the court's judgment in this regard. However, in view of our decision to reduce the degree of the offense to robbery, we believe it necessary to also modify the sentence. Having considered the circumstances of the offense as well as the evidence adduced at the hearing in mitigation and aggravation, we believe that a sentence of not less than one nor more than three years in the Illinois State Penitentiary would be appropriate here. Accordingly, we so reduce the sentence pursuant to our power under Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1969, ch. 110A, par. 615(b)(4)).

The judgment of the trial court is therefore modified to adjudge defendant guilty of robbery with defendant sentenced to a term in the Illinois State Penitentiary to not less than one year and not more than three years and, as modified, the judgment is affirmed.

Judgment affirmed as modified.

GOLDBERG, P. J., and BURKE, J., concur.