THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS FIALA, Defendant-Appellant.

Third District     No. 79-905

Opinion filed June 25, 1980.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The defendant, Thomas Fiala, was convicted of armed robbery following a bench trial and was sentenced to a nine-year term of imprisonment. Only one issue is raised on appeal: whether the defendant's conviction for armed robbery should be reduced to simple robbery where the evidence presented was insufficient to establish, beyond a reasonable doubt, that the defendant was armed during the commission of the robbery.

The evidence presented at trial revealed the following sequence of events. On June 27, 1979, at approximately 7:45 p.m., the defendant approached the service desk of a Jewel food store wearing a motorcycle helmet and dark sunglasses. He was wearing a T-shirt, covered by a second shirt which was unbuttoned and not tucked in. The defendant handed a note to one of two female employees working at the service desk. The note read as follows: "This is a stick-up. Give the man in front of you the money. Do as you are told and no one will be hurt. I am watching you."

A slight delay ensued as both female employees read the note before they began to stack money on the counter. The defendant became angry and growled at the women to hurry. At the same time he made a downward, jerking motion with his right hand toward his waist, a move both female employees interpreted to mean that he had a gun or some

type of weapon. Neither employee could see below the defendant's waist, because the counter blocked their view. One of the two employees testified that she could see down to the defendant's waist, but the only part of the waist she could see was his belt buckle, because the open, untucked shirt covered the rest.

After the two employees had stacked all the money on the counter, the defendant slammed his left hand on the counter and grabbed the money. With his right hand the defendant grabbed the note which was lying on the counter. He stepped back a few feet, walked, and then ran to the exit.

A customer present at the robbery scene testified that he stood to the left of the defendant and at a slight angle behind him at the service desk. From that viewpoint he could not see the defendant's right hand. He did observe the defendant smack the counter with his left hand and heard him say "Move," after which the defendant brought his left hand down to the area of his belt buckle. The customer testified that he never saw a weapon nor heard the defendant state that he had a gun, but on cross-examination he stated that he "felt" the defendant was going to injure someone by the use of a weapon.

The customer followed the defendant from the store and observed him drive away in a blue Volkswagen. This information was relayed to the police and within minutes of the robbery a squad car carrying two officers stopped behind the defendant at a traffic light. The police exited their squad car with their weapons drawn and stood behind their squad car doors, a position described as appropriate when confronting a possible armed suspect. The officers observed the defendant's head bend down as if he were going under the seat. When asked on cross-examination if the defendant could have been reaching for a weapon, one of the officers testified that it was a possibility.

When traffic ahead of him cleared, the defendant sped off. A chase resulted which eventually involved between 12 and 15 squad cars and reached speeds of 85 miles per hour. During the course of the pursuit, a helmet and shirt were thrown from the car. Latent fingerprints and hair particles in the helmet were found to match those of the defendant.

The defendant eventually abandoned his car and proceeded on foot. A police officer observed the defendant climbing a ladder and ordered him to stop. The defendant jumped from the ladder and landed in some bushes, some three feet away from the officer. The defendant landed in a crouched position, facing the officer, who observed the defendant place his right hand under the front of his T-shirt by the waistband of his trousers and place his left hand in a similar position. The defendant made a fumbling motion under his T-shirt. At this time the officer subdued the defendant. After the defendant was removed from the scene a search of

the area resulted in the discovery of a gun in the spot where the defendant was apprehended. Over the defendant's objections the handgun found in the bushes was admitted into evidence at trial. The defendant denied owning a handgun but stated that he had owned a shotgun at one time. The defendant's girlfriend testified in his behalf that she had known the defendant for a period of about 20 months, that she had usually seen him every day during this period, and that she had never seen him in possession of a handgun but had seen him in possession of a rifle.

The defendant contends that the circumstantial evidence presented at trial failed to establish, beyond a reasonable doubt, that he possessed a weapon during the commission of the offense. For that reason he asserts that his conviction for armed robbery should be reduced to the lesser included offense of robbery and the cause remanded to the trial court for resentencing.

The offense of robbery is defined in Illinois as follows:

"A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1977, ch. 38, par. 18—1.) Armed robbery is defined as follows:

"A person commits armed robbery when he or she violates Section 18—1 while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon." Ill. Rev. Stat., 1978 Supp., ch. 38, par. 18—2(a).

■■ ■ By statutory definition, to commit armed robbery in Illinois it is necessary that the offender actually possess a dangerous weapon at the time of the offense. It is not sufficient for a conviction of armed robbery that the perpetrator threaten the use of force or violence with a dangerous weapon, if in fact the individual is not armed. Where a defendant is convicted for armed robbery, and the evidence fails to show that he was armed with a dangerous weapon, the conviction must be reversed. (*People v. Taylor* (1972), 3 Ill. App. 3d 313, 278 N.E.2d 469; *People v. Binion* (1967), 80 Ill. App. 2d 130, 225 N.E.2d 485.) Where the victim is lead to believe, by the defendant, that the defendant possesses a dangerous weapon when in fact he does not, the defendant is guilty of robbery, not armed robbery. *People v. Carpenter* (1966), 71 Ill. App. 2d 137, 217 N.E.2d 337.

In the case at bar we find that the State's circumstantial evidence, which established that the defendant possessed a gun shortly before being apprehended by the police, was not sufficient to prove beyond a reasonable doubt that the defendant possessed the gun during the commission of the robbery. None of the three eyewitnesses observed a weapon or testified to the existence of a bulge in his clothing which might have indicated the presence of a gun or other weapon. Furthermore, at

one point during the chase which occurred after the defendant fled from the grocery store, he was observed by police officers reaching over in his car. It is within reason to assume that the defendant was reaching for a gun hidden under the seat.

■■ To warrant a conviction on circumstantial evidence, the accused's guilt must be so thoroughly established as to exclude every other reasonable hypothesis. (*People v. Widmayer* (1948), 402 Ill. 143, 83 N.E.2d 285.) In the case at bar, one reasonable hypothesis of the events which transpired is that the defendant obtained the gun from under the seat of his car after leaving the Jewel store.

*People v. Chapman* (1979), 73 Ill. App. 3d 546, 392 N.E.2d 391, relied on by the State, is inapposite. In *Chapman* this court discussed whether an objective or subjective test should be applied in determining whether or not a weapon used in a robbery is dangerous. This question assumed that a weapon was employed, as was the case in *Chapman*, unlike the present situation where the question is whether or not the defendant possessed a weapon of any sort at the time of the robbery.

*People v. Elam* (1972), 50 Ill. 2d 214, 278 N.E.2d 76, and *People v. Fultz* (1968), 96 Ill. App. 2d 220, 238 N.E.2d 222, cited by the State in support of its argument that the evidence was sufficient to sustain the defendant's conviction for armed robbery, are distinguishable from the present case. In both *Elam* and *Fultz* the defendant's conviction for armed robbery was affirmed on appeal in cases where the victim did not see a weapon but the defendant was later found in possession of a dangerous weapon, and this circumstantial evidence was used to establish his guilt. However, in *Elam* the defendant robbed a bus driver and was apprehended less than 10 minutes later only 1½ blocks from the scene of the crime, standing on a street corner. There was no evidence, unlike in the present case, that the defendant had walked to a place, such as a house or a car, where he could have obtained a weapon after the offense. Also, in *Elam* the defendant kept his hands in his pockets when observed by two occurrence witnesses, whereas in the instant case, both of the defendant's hands were visible at one point or another and there was no testimony that the defendant appeared to be hiding a weapon under his clothing. In *Fultz* the defendant was apprehended within minutes of the robbery crouching in the back seat of a cab. As in *Elam*, there was no evidence that the defendant had walked to a house or car after the robbery where he might have obtained a weapon. Furthermore, the witness in *Fultz*, as the witness in *Elam*, and unlike the witnesses in the case at bar, observed a "point" in the pocket in which the defendant held his hand which might reasonably have resulted from the concealment of a weapon.

■■ For the foregoing reasons we exercise our power under Supreme Court Rule 615(b)(3) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(b)(3)) and

reduce the degree of the offense for which the defendant was convicted from armed robbery to robbery. The cause is remanded to the circuit court of Will County for a sentencing hearing on the simple robbery conviction.

Judgment affirmed, as modified, and remanded for sentencing on the modified judgment.

ALLOY, P. J., and STOUDER, J., concur.